ble under the provisions of the fifth section of the act of July, 1862 [12 Stat. 546], to an ad valorem duty of ten per cent. and the act was applied under the circular of Secretary Chase, referred to, to the plaintiff's importation of gambia or terra japonica, and it was against this application of the fifth section of the tariff act, and to recover the amount exacted under its operations, the action was brought.

Mr. A. R. Culver, for plaintiff, opened the case, and submitted briefly to the court the law bearing on the issue. The act of March, 1861, provides that terra japonica, catechu or cutch shall be admitted to entry free of duty. The act of July, 1862, provides, that cutch or catechu shall pay a duty of ten per cent. ad valorem, and makes no allusion whatever to the other article, terra japonica, which, therefore, counsel contended, still stands, under the act of 1861, free of duty. Mr. Culver examined a number of witnesses, either at present engaged or lately engaged in importing and dealing in the article gambia or terra japonica, and catechu, or cutch, who clearly proved that in commerce, gambia, or terra japonica, was known as an entirely different and distinct article of trade from cutch or catechu, though to a considerable extent assimilating in their properties and the uses to which they can be applied. The articles, however, are different in origin, being imported from different countries of the East, and sold in the markets here and in England at about one-half the price, gambia being the cheaper article.

Mr. Courtney, U. S. Dist. Atty., called but one witness for the defence, when Judge Smalley said that if there was nothing but cumulative evidence as to what gambia was, and whether it should come under the designation of cutch or catechu, or under that of terra japonica, taking such testimony would be a waste of time. It was clear from the evidence that gambia and terra japonica were synonymous, and that congress, when exempting terra japonica from duty, meant gambia.

THE COURT ordered the jury to return a verdict for the plaintiff in the full amount claimed. Verdict accordingly.

———

HALLETT (TOY WILLIAM v.). See Case No. 14,123.

———

## Case No. 5,960.

### In re HALLIE et al.

[7 Ben. 182.] [1]

District Court, S. D. New York. March, 1874.

TAKING PAPERS FROM FILES.

At the first meeting of creditors of a bankrupt, objection was made to certain proofs of debt

[1] [Reported by Robert D. Benedict, Esq., and B. Lincoln Benedict, Esq., and here reprinted by permission.]

which had been filed by three creditors. The register ruled that the proofs were insufficient, and that the creditors could not vote. The counsel for the creditors asked leave to amend the proofs of debt, which was granted. The three creditors afterwards claimed the right to withdraw the proofs of debt from the register's office. *Held*, that the proofs could not be so withdrawn.

[In bankruptcy. In the matter of Abraham Hallie and Bernard Brunner.]

The register certified to the court, in this case, that, before the first meeting of creditors, proofs of debt were filed on behalf of three creditors; that the creditors were put on the list; that, at the first meeting, these creditors were called to vote, when objection was made by other parties; that the register ruled, that the proofs were insufficient; that counsel for the creditors asked leave to amend the proofs of debt, which was granted, but they did not avail themselves of such leave granted; that proceedings were thereafter taken to expunge the claims, whereupon the creditors sought to withdraw the proofs of debt from the register's office—and the register certified the following question: "The proofs of debt having been sworn to, filed, and afterwards, upon objection made to them at the first meeting of creditors, postponed by the register under the 23d section [of the bankrupt act of 1867 (14 Stat. 528)], have the creditors a right to withdraw them, thereupon, from the register's office, upon their mere demand?

BLATCHFORD, District Judge. The question certified is answered in the negative.

———

## Case No. 5,961.

### The HALLIE JACKSON.

[Blatchf. Pr. Cas. 41.] [1]

District Court, S. D. New York. Aug., 1861.

ADMIRALTY — FLAG WORN DETERMINES CHARACTER OF VESSEL—BLOCKADE—WHAT CONSTITUTES VIOLATION OF.

1. A vessel is clothed with the character of the flag she wears.

2. Vessel condemned as enemy property, and for an attempt to violate the blockade.

3. A vessel approaching a blockaded port, with intent to violate the blockade, is not entitled to be warned off.

4. Cargo condemned as enemy property. It was also shipped for an enemy port, with intent to violate the blockade.

[Cited in The Amy Warwick, Case No. 341.]

In admiralty.

BETTS, District Judge. The brig Hallie Jackson, her tackle, &c., and the cargo laden on board, were captured on the 10th day of June, 1861, on the high seas, off the coast of Georgia, near Tybee light, by the United States steamship Union, under the command of J. R. Goldsborough, and have been libelled

[1] [Reported by Samuel Blatchford, Esq.]